**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WILLIE J. LONDON,

                              Plaintiff,

           - v -                                      Civ. No. 1:14-CV-1095
                                                                         (MAD/RFT)

COUNTY OF ULSTER; ULSTER CO. D.A. OFFICE;
LAWRENCE BALL, *City of Kingston Court Judge*;
MATTHEW JANKOWSKI, *ADA, Ulster County D.A. Office*;
and GERARD CAREY, ESQ.,

                              Defendants.

**APPEARANCES:**                            **OF COUNSEL:**

WILLIE J. LONDON
Plaintiff, *Pro se*
2040 Scarbrough Trail East
Stone Mountain, GA 30088

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT RECOMMENDATION and ORDER

      The Clerk has sent to the Court for review a civil rights Complaint, filed pursuant to 42 U.S.C. § 1983, from *pro se* Plaintiff Willie J. London. Dkt. No. 1, Compl. Plaintiff has also filed a Motion to Proceed *In Forma Pauperis* ("IFP"). Dkt. No. 2. By his Complaint, Plaintiff asserts that after getting into a car accident on January 18, 2012, he was improperly charged with driving while intoxicated ("DWI") and that Kingston Police Officers fabricated evidence in order to procure a conviction. He also asserts that all the Defendants, including Matthew Jankowski, the Assistant District Attorney ("ADA") who criminally prosecuted him in Ulster County Court, and the Honorable Lawrence Ball, the judge presiding over his criminal trial, conspired to tamper with and

falsify evidence and to procure perjured testimony from witnesses. Although he was acquitted of the DWI charge, Judge Ball nevertheless found him guilty of failing to yield right of way when making a left turn. During the course of the criminal trial, Plaintiff was incarcerated and, as a result of these events, he had to appear for a parole revocation hearing, where his parole was revoked, resulting in more time in prison. For a complete statement of Plaintiff's claims, reference is made to the Complaint.

## I. DISCUSSION

### A. IFP Application

Turning first to Plaintiff's Motion to Proceed with this Action IFP, after reviewing the entire file, the Court finds that Plaintiff meets the requirement for economic need and thus may properly proceed with this matter IFP.

### B. Standard of Review

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v.*

*Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Furthermore, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### C. Plaintiff's Complaint

According to the Complaint, on January 18, 2012, Plaintiff was driving his car in Kingston, New York, and, as he was making a left turn, his car was struck by another vehicle. Compl. at ¶¶

1-4. Kingston Police Officers Matthew Eckert and Andrew Zell, who are not named as defendants, quickly arrived on the scene and demanded that Plaintiff take a field sobriety test. *Id*. at ¶¶ 5 & 6. Officer Eckert told Plaintiff that he failed the test and ignored Plaintiff's demands for a blood or breathalyzer test. *Id*. at ¶¶ 6 & 7. Because Plaintiff was bleeding, he was taken by ambulance to the Kingston City Hospital where Nurse Beth Bagner, who is not named as a defendant, drew Plaintiff's blood and handed one vial of blood to Officer Eckert, while keeping a second vial at the hospital. *Id*. at ¶ 10. After receiving treatment, Plaintiff was escorted home by Officer Eckert who gave him an appearance ticket for DWI and failing to yield right of way when turning left. *Id*. at ¶ 11.

The following day, Plaintiff reported the incident to his parole officer, who had apparently already been informed of what transpired and requested that a parole violation warrant be issued. *Id*. at ¶¶ 12 & 14. On January 26, 2012, Plaintiff appeared before Judge Ball, who informed him that a "warrant for parole violation will be issued," and remanded Plaintiff to the Ulster County Jail with bail set at $5,000.00; hours later, a parole violation warrant was faxed by Plaintiff's parole officer to the jail. *Id*. at ¶ 16. On April 8, 2012, London appeared again before Judge Ball and was presented with a toxicology report prepared by a forensic scientist with the New York State Police Mid-Hudson Regional Crime Laboratory; according to Plaintiff, the report noted his "Ethyl Alcohol percent by weight" to be 0.12. *Id*. at ¶ 24. On April 18, 2012, the date Plaintiff was scheduled to stand trial, ADA Jankowski produced a "'Prosecutor's Information' charging Plaintiff with 'DWI as a Misdemeanor VTL Section 1192(2)." *Id*. at ¶ 25. Plaintiff remained in jail until June 6, 2012,

when his trial began.[1]  *Id*. at ¶¶ 18-27.

Although Plaintiff indicated he wanted to represent himself, Judge Ball appointed Gerard Carey, Esq., to assist Plaintiff.  *Id*. at ¶ 23.  Plaintiff drafted a list of people he wanted to subpoena for trial, but neither Judge Ball nor Attorney Carey contacted any of those individuals on Plaintiff's behalf.  *Id*. at ¶¶ 23 & 52.

Plaintiff asserts that during the trial, ADA Jankowski, Judge Ball, and even Attorney Carey conspired to ensure that Plaintiff was convicted.  He claims that Jankowski coached witnesses to lie and solicited perjured testimony from them, Judge Ball overruled many of Plaintiff's objections regarding false testimony and therefore allowed witnesses to testify falsely and also allowed the prosecutor to continue with the case despite failing to provide Plaintiff with evidence, and Attorney Carey failed to interview witnesses on Plaintiff's behalf, thereby compromising his ability to present a defense.  *Id*. at ¶¶ 27-66 & 69-71.  Nevertheless, at Plaintiff's behest, Carey delivered closing remarks to the jury on Plaintiff's behalf.  *Id*. at ¶ 78.

Upon conclusion of the two-day trial, the jury found Plaintiff not guilty of driving while intoxicated.  *Id*. at ¶ 79.  Plaintiff was returned to jail pending resolution of the parole violation warrant and the ticket charging him with failure to yield right of way when turning left.  *Id*. at ¶ 80. Then, on June 18, 2012, Plaintiff appeared before Judge Ball, who found Plaintiff guilty of the infraction of failing to yield right of way when turning left and assessed a monetary fine.  *Id*. at ¶ 83. On June 25, 2012, Plaintiff appeared before an "Administrative Law Judge" for a "Final Parole Violation Hearing."  *Id*. at ¶ 91.  During that hearing, a discussion ensued regarding Plaintiff's desire to serve the rest of his parole in Georgia so he could be near his daughter.  From what we can

---

[1] It appears there had been several adjournments as well as other proceedings associated with London's case during this time frame. *See* Compl. at ¶¶ 18, 22, & 26.

decipher, it appears that the judge revoked his parole but directed Plaintiff upon his return to jail to immediately seek a parole transfer to Georgia; the judge would put an eighteen-month "hold" to ensure all the paperwork was set, advised him that he would not have to appear before a parole board, and gave him six months jail credit for the time served while awaiting trial on the DWI charge. *Id*. at ¶¶ 92-93.

In August 2012, while in prison, Plaintiff began feeling very ill, with symptoms such as chills, shakes, sweats, dizziness, and physical pain; he also experienced great weight loss as he could not eat anything without regurgitating. *Id*. at ¶ 97. After many tests and courses of treatment, he was diagnosed as having contracted "pneumococcal meningitis bacteremia." *Id*. at ¶¶ 97-99. On January 25, 2013, Plaintiff was released from prison and was transferred to Georgia, where he would be supervised on parole. *Id*. at ¶ 102.

It is Plaintiff's view that his involvement in the car accident in January 2012 quickly evolved into an arrest and prosecution because he is a black man on parole. *Id*. at ¶ 105. He asserts that all the Defendants conspired to prosecute him with falsified evidence without taking the time to investigate the real cause of the accident, which he asserts is the other driver's fault, and that he suffered greatly as a result, including re-incarceration, during which time he lost much of his personal property and became gravely ill. *Id*. Plaintiff also asserts that the Defendants conspired with parole officers, City of Kingston Police Officers, forensic scientists, hospital nurses, and the driver of the other car "to commit perjury, fraud, harassment, for [his] false arrest and unlawful imprisonment" and further tampered with evidence and witness testimony with the aim of deceiving the jury in order to obtain a conviction. *Id*. at Fourth Cause of Action.

The Court notes that Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which

"establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) & 42 U.S.C. § 1983); *see also Myers v. Wollowitz*, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

It is well-settled, however, that parties may not be held liable under § 1983 unless it can be established that they have acted under the color of state law. *See*, *e.g., Rounseville v. Zahl*, 13 F.3d 625 (2d Cir. 1994) (noting state action requirement under § 1983); *Wise v. Battistoni*, 1992 WL 280914, at *1 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted). State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.*, 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (citation omitted). Nowhere in his Complaint does Plaintiff allege that Mr. Carey was acting under color of state law, and indeed, it is clear that an appointed attorney, in representing an indigent client, is not acting under color of state law. *Polk Cnty. v. Dodson*, 454 U.S. 312, 321 (1981); *Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (noting that a claim for ineffective assistance of counsel is not actionable in a § 1983 proceeding and further citing *Polk Cnty. v. Dodson* for the proposition that public defenders do not act under color of state law and are not subject to suit under § 1983). Thus, having failed to state a cognizable cause of action against Defendant Carey, the Court recommends that he be dismissed from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Additionally, the Court notes that Plaintiff has named Judge Ball and Matthew Jankowski

as Defendants. However, these individuals are absolutely immune from suit.[2] *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (noting that "[j]udges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction"); *Collins v. Lippman*, 2005 WL 1367295, at *3 (E.D.N.Y. June 8, 2005) (judicial immunity applies to actions seeking monetary and injunctive relief); *see also Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (noting that prosecutors are absolutely immune from liability under § 1983 in matters involving the prosecution).[3] While Plaintiff has scripted pages upon pages of accusations against these two Defendants, including claims of bias, coercion, and witness/evidence tampering, these accusations are a cavalcade of conclusions and not facts upon which this Court may find that a plausible claim has been pled here. Thus, we recommend dismissing these Defendants from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii). Furthermore, although the caption of the Complaint includes the Ulster County D.A.'s Office and the County of Ulster, Plaintiff does not assert any facts or causes of action against such entities. Because we find that the employees of these entities are not subject to suit under § 1983, it follows that, in the absence of any specific allegations of wrongdoing, no cause of action would ensue against these entities.

In its current form, the Complaint fails to state a claim upon which relief could be granted.

---

[2] The Court notes that although immunity from suit is a defense that would be raised by a defendant, the Second Circuit has held that, for purposes of an initial review under 28 U.S.C. § 1915, a court may find that a complaint is based on an indisputably meritless legal theory if a defense "appears on the face of the complaint," and may validly raise such a claim *sua sponte*. *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (collecting cases throughout the various Circuit Courts of Appeal that have upheld § 1915 dismissals based upon defenses that appear on the face of the complaint). The Court notes, as set forth below, that Plaintiff will have an opportunity to present any objections he has to this Court's recommendations to the assigned District Judge.

[3] Additionally, although not named as a defendant, to the extent Plaintiff sought to sue the individual who revoked his parole, thus placing him in prison for additional time, she too would be entitled to immunity from suit. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (noting that "parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole").

Under such circumstances, the Court would normally grant a *pro se* litigant, such as Plaintiff, an opportunity to amend the Complaint in order to avoid dismissal. *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002). However, such measures are not warranted here because, as explained above, any amendment would be futile in light of the infirmities plaguing this action. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (dismissal is appropriate where leave to amend would be futile). In light of the above discussion, it is clear that Plaintiff's civil rights Complaint cannot proceed as drafted and any amendment thereto would be futile.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's *In Forma Pauperis* Application (Dkt. No. 2) is **granted**; and it is further

**RECOMMENDED**, that the entire Complaint be **dismissed**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) & (iii), for failure to state a claim upon which relief can be granted and for naming Defendants who are protected by absolute immunity; and it is further

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on Plaintiff by certified mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: February 19, 2015
       Albany, New York

Randolph F. Treece
U.S. Magistrate Judge